36738. ADAMS *v.* TAYLOR.

DECIDED JUNE 20, 1957.

*Larry E. Pedrick, Bennett, Pedrick & Bennett,* for plaintiff in error.

*James L. Boatright,* contra.

FELTON, C. J. The evidence pertinent to a decision of this case is as follows: The defendant, called by the plaintiff as a witness for the opposite party for cross-examination, testified: that at the time of the accident he was night policeman at Nicholls, Georgia; that he was driving the automobile about midnight on April 1st when it collided with Mr. Rigdon's automobile; that

he was seated in his automobile in Nicholls with the plaintiff talking, when Mrs. Marie Meeks requested him to go to Bear's Drive-In and make an investigation for her; that Bear's Drive-In is approximately two miles or more from Nicholls; that he did not remember the plaintiff's requesting that he let the plaintiff out of the car; that the plaintiff did not make that request; that when Marie pulled out, he pulled out behind her; that Winnie Lee Sanders was about two hundred yards from the point of the collision, he having passed her prior to the collision; that he would not swear whether or not he had dimmed his lights but that when he followed a car he thought he would be truthful in saying that he had the lights dim at the time on account of following close behind the girl in the car; that he did not swear that he did dim his lights or did not dim them other than just previously stated; that it was dark and necessary for him to use headlights; that his automobile was a total loss.

Trenton C. Taylor, plaintiff, testified on direct examination: that he remembered the night of April 1, 1955, pretty well; that he was a passenger in an automobile driven by the defendant at that time and that he was injured in an automobile accident in an automobile driven by the defendant; that the defendant stated how the collision came about pretty well; that he was sitting up there talking with him and Marie Meeks came up and said someone was out there breaking in the place, or something, and the defendant said he would go see about it and the defendant took off; that as they were riding along they overtook Marie somewhere up the road and got up close to her and she kind of slowed down and motioned to some girl walking in the ditch out there and that the defendant and he were looking at her and deciding who it was, and that one would say it was she, and one say it was not, and that the first thing you knew "it was just like that"; that Marie was pretty well gone when they started off; that he couldn't say at what speed the defendant was driving when he first came out of Nicholls but they were "hitting it pretty well"; that he would estimate the speed at 60 to 70 miles an hour; that they overtook Marie; that when Marie slowed down she put her brakes on and had her hand out to show them the woman walking in the ditch down there and that they were look-

ing at her and discussing who it was and that "was just about it"; that as to the position of the automobile in which he was riding when it struck the automobile, they were zigzagging and the defendant was looking the other way and that before "I could say anything or he could say anything it was hit"; that if the defendant dimmed his lights, the plaintiff did not see it; that he could not say whether he was in position to see the defendant dim his lights if he did dim them; that he and the defendant were both looking at the woman in the ditch; that he was not in a position to swear positively whether or not the defendant dimmed his lights; that neither one of them was looking at the road; that they were looking at the girl in the ditch; that at the time the collision occurred he could not say just what the speed was at which they were traveling; that the defendant reduced his speed some and Marie slowed down in front of him; that he would say that they were going sixty or sixty-five miles an hour or something like that; that "we was looking back, both of us, and when we tried to get back it was just a smash"; that "we were looking back and we couldn't tell where we were."

On cross-examination, the plaintiff testified: that when Marie pulled out the defendant pulled out right behind her; that he could not estimate how far Marie had gone before the defendant started; that the defendant caught up with her; that at the time the defendant caught up with her they were going about the same speed, which he would estimate to be sixty or sixty-five miles an hour; that he did not know the exact speed as he was not looking at the speedometer, but that he would say that Mrs. Meeks was going sixty or sixty-five miles an hour; that both of them were going around sixty or sixty-five; that Mrs. Meeks had left Nicholls and was traveling sixty to sixty-five miles an hour after she had slowed down for them to catch up; that that was when she passed this woman in the ditch; that he turned around looking at the woman in the ditch and that he felt the car zigzagging when the collision occurred; that that is all he knew about it; that he did not see the other car at all; that he did not know what part of the highway the collision took place on; that "if we were zigzagging we were looking to the rear and our car was zigzagging"; that the collision could have happened on

the north side of the highway, in the middle of the highway or on the south side, so far as he knew; that it could have happened anywhere after the accident and he would not have known; that Mrs. Meeks' automobile was about 100 yards ahead of them when her brake lights went on when she started slowing down; that after Mrs. Meeks put on her brakes that they got as close as 100 yards and she was still going sixty to sixty-five miles an hour.

Homer B. Adams, defendant, testified: that Mrs. Meeks left Nicholls before he did; that the lights of her car were in sight; that he did not think he drove over forty-five or fifty miles an hour the entire distance he traveled; that he thought Mrs. Meeks slowed down a little when she saw the woman but that she did no pointing that he saw; that he looked at the woman in the ditch and they were two hundred yards beyond the woman when the collision occurred; that he did not turn around and look at the woman after they passed her; that he looked at her in the ditch; that he was looking down the road after he passed the woman in the direction in which he was going; that he was driving on the right-hand side of the highway; that he did not see anything out of the ordinary about the other car until it just swerved toward him; that he saw the car lights before the car got right up on him; that you do not register things like that if you don't know something's going to happen; that when he first noticed the car it swerved right at him; that when the car swerved toward him he was on his side of the highway and that he believed he was partly off the road before he was hit, at which time he was on his side of the road; that when he was hit he had a reflex and pulled to the right; that the other car hit the left-hand light of his car and twisted his car around crossways the road; that his car went fifteen or twenty feet and stopped crossways the road; that the other car went, by guess, 150 feet or farther on across the road on the defendant's side, crossed the ditch and plowed into the embankment; that the other car would have had to be going sixty or seventy miles an hour to do the damage it did; that he saw the men who were in the other automobile that night and that he would say they were drunk; that the pavement they were driving on was not broken and uneven, but was ordinary,

good road; that he could not have done anything to avoid being hit unless he had known what the other driver intended to do; that he did not know how many seconds were involved from the time he saw the car coming toward him until the time he was hit, that there was not time to do anything once the other car swerved across the road; that all he could do was turn, but he did not get in the ditch.

Mrs. Marie Ann Meeks, witness for the defendant, testified: that she asked the defendant to follow her to her home, and about one hundred yards from her home the car that collided with defendant's caused her to have to take the ditch to miss it; that he was going about thirty-five or forty miles an hour; that the other car was swerving on the road; that it was on her side of the road completely when she had to leave the road into the ditch; that the speed of that car was at least sixty miles an hour; that she saw the defendant's car through her rear-view mirror; that she had kept the defendant's car lights in view since they left Nicholls; that the defendant drove one hundred or one hundred and fifty feet behind her; that the defendant did not pass her; that she drove at about forty miles per hour from Nicholls; that she actually saw the car collide with the defendant's car through the mirror; that the defendant's car was on its side of the road at the time of the collision; that after the collision the defendant's car was north and south across the highway with the back wheels off the highway with the front wheels pointed northward; that the other automobile was about 150 feet across the south side of the highway in the ditch and into a fence; that the men in the other automobile were under the influence of alcohol; that the lights on the defendant's car were dim; that she and defendant's wife are first cousins.

E. C. Gilliard, sworn for the defendant, testified, that he was Deputy Sheriff of Bacon County, and corroborated Mrs. Meeks as to the location of the cars and the condition of the men in the vehicle involved with the defendant in the collision.

E. W. Tillman, sworn for the defendant, testified: that he was a trooper with the Georgia State Patrol; that he investigated the collision in question with Sergeant Hamrick about 1:30 a.m., Saturday, April 2, 1955; that the defendant's car was crossways

the road, headed north with the rear wheels off the road; that there was a scuff mark on the highway that indicated where the left front wheel of defendant's car was knocked down at the time of impact; that the defendant's car, which had been headed eastward, was on the south side of the center line; that the right wheels of the defendant's car were touching the shoulder of the road, right on the edge at the time of impact; that scuff marks were made on the shoulder by the defendant's car's rear wheels when it spun and skidded around; that the other car, a Studebaker, was on the south side of the highway across the ditch, from one hundred to two hundred feet from the point of impact; that the defendant's car was damaged from the left front fender to the door.

The evidence did not authorize a finding that the defendant was guilty of any act or acts of negligence which proximately caused the plaintiff's injuries. The only way the jury could possibly have arrived at a finding that the defendant was negligent was to accept the testimony of the plaintiff in preference to that of any other witness which was to the contrary. The plaintiff's testimony did not authorize the finding that the defendant did not dim his lights, or that the pavement was rough. The plaintiff's testimony as to the speed of defendant's car was most contradictory and uncertain, but assuming for the sake of argument that the defendant was negligent in driving too fast and in looking back at the woman in the ditch, there is no evidence to authorize the finding that such negligence was the proximate cause of the collision. There is no evidence whatever that the defendant's car ever got on the wrong side of the road or that if the defendant had been looking ahead and exercising ordinary care he could have avoided the collision.

The court erred in denying the motion for a judgment notwithstanding the verdict. The judgment is reversed with direction that the court enter up a judgment in accordance with the motion.

*Judgment reversed with direction. Quillian and Nichols, JJ., concur.*